# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| CAROL E. JARMAN, | ) |
| Plaintiff, | ) |
| v. | ) NO. 3:15-cv-00781 |
| | ) JUDGE CRENSHAW |
| JOSTENS, INC., | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Carol Jarman filed this action against her former employer, Jostens, Inc. ("Jostens"), alleging multiple violations of federal law arising from her employment. (Doc. No. 1.) Before the Court is Jostens's Motion for Summary Judgment. (Doc. No. 13.) For the following reasons, Jostens's motion is **GRANTED**.

### I.   UNDISPUTED FACTS[1]

Jarman is a white woman who worked at Jostens under an African-American supervisor, Henry Hampton. (Doc. No. 1 at 2.) When Hampton became Jarman's supervisor, Jarman told Hampton that she had an allergy-induced skin condition, which would require her to occasionally take time off work to attend doctor's appointments when the condition flared up. (Doc. No. 21 at 8.) She stated that the skin condition sometimes was "very bad," but it would not affect her ability to do her job. (Id.) Her condition varied in degrees, so some days it would require her to come in

---

[1] In determining the undisputed facts, the Court looked to Jarman's Response to Josten's Statement of Undisputed Facts (Doc. No. 21) and any facts cited in her brief (Doc. No. 20), although facts in the brief are not in the proper form under Local Rule 56. However, all the facts contained in Jarman's brief came from her unverified Complaint (Doc. No. 1), which cannot create a dispute of material fact under Federal Rule of Civil Procedure 56(e). Celotex Corp. v. Catrett, 477 U.S. 317, 214 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . . ."). The Court may use the unverified Complaint for background information if the information appears to be undisputed.

late or go home early. (Id.) However, other days she would work longer hours to ensure her work was completed. (Id.) As a result of this skin condition, in April 2013, Jostens approved Jarman for intermittent family medical leave under the Family Medical Leave Act ("FMLA"). (Id.) It recertified her for intermittent family medical leave in September 2013. (Id.)

In April 2013, Jarman discovered that her skin condition could be a result of chemicals used in the printer toner at her work. (Doc. No. 14-1 at 56.) On May 21, 2013, she emailed Jeff Battle asking him if three chemicals—polyvinylpyrrolidone/povidone, brilliant black, or morpholine—were used in the plant. (Doc. No. 14-1 at 56.) Battle responded that Jostens did not use polyvinylpyrrolidone/povidone in the plant, and asked her for more information about brilliant black or morpholine. (Id.) Jarman responded that brilliant black would be printer ink, and her printer was "COK, Cokpis02." (Id.) Battle asked for a printer manufacturer name and model number, to which Jarman responded that she would ask Eric Litloff for the toner cartridge information and would ask Battle for assistance again if needed. (Id.) Litloff discovered that brilliant black was used in Jostens's printers, but Jarman did not share this information with Battle. (Id. at 57.) Jarman never requested to anyone at Jostens to stop using brilliant black. (Id.)

In March 2013, Hampton told Jarman's whole department that he would not approve any overtime because of budgetary concerns. (Id. at 41-42.) Later, when Mattie Pearson, the African-American Team Lead, started requiring overtime, Hampton approved Pearson's overtime. (Id. at 42.) In mid-April 2013, and while Hampton was on vacation, Mike McAlister, the plant manager, came to Jarman and asked why she had a backlog on her work. (Id.) Jarman told McAlister that Hampton would not approve any overtime and it was the plant's busy season, so the work started backing up. (Id.) McAlister told Jarman to work overtime and the weekend in order to catch up on her work. (Id.) Jarman believes that Hampton became angry with Jarman for "going over his head"

to McAlister about the overtime issue, and their relationship "was just bad from there on." (Doc. No. 21 at 2.)

During this time, Jarman felt Pearson, her longtime coworker, had begun ignoring her. (Id. at 3.) Jarman felt that Pearson and Hampton had a sort of rapport that made Jarman feel uncomfortable when she was in a room alone with them. (Id.)

At one point, Hampton was out of the office without notifying Jarman. (Id. at 4.) Jarman needed to modify her schedule that week, so she went to Doug Griffith to ask to modify her schedule. (Id.) She would have gone to Hampton earlier if she had known Hampton would not be at work. (Id.) When Hampton returned, he was upset that Jarman went to Griffith for her request because he felt Jarman did so "just so she could get her way." (Id.)

In October 2013, Hampton called a meeting with Jarman and asked a coworker, Patricia Collins, to sit in on the meeting as a witness. (Id. at 5.) The meeting was regarding Jarman's request to take vacation days for a trip to Colorado. (Id.) Jarman believed this was a personal matter, and it was inappropriate for a coworker to sit in on the meeting. (Id.) She told Hampton that "he was not treating her right and that she was not a doormat and refused to be treated that way." (Id. at 5-6.) Hampton denied her request for vacation days because she did not provide enough notice. (Id.)

Jarman approached Ron Struble, the Human Resources manager, about Hampton denying her request for vacation time. (Id. at 6.) Struble described Jarman's demeanor as "irate," and thought it was inappropriate for her to lose her temper over the incident. (Id.) McAlister instructed Jarman to take the rest of the day off in order to calm down. (Id.) The next day, Struble met with Hampton to ask about Hampton's problems with Jarman's performance and behavior. (Id.) Hampton told Struble that he felt Jarman was being insubordinate. (Id.) Hampton asked for

3

coworkers to sit in as witnesses to his meetings with Jarman because he felt that Jarman had misinterpreted or misconstrued his words after prior discussions with her. (Id.)

A few days later, Collins approached Struble and complained that Jarman's "unprofessional behavior toward Hampton was making her very uncomfortable." (Id.) She then reported Jarman's behavior to Jostens's 1-800 hotline. (Id. at 7.) Pearson also called the 1-800 hotline to complain about Jarman's behavior. (Id.) Struble met with Jostens's Vice President of Human Resources, Natalie Stute, and they decided to terminate Jarman's employment. (Id.) They terminated Jarman "based on employee complaints, Struble's personal observations about Jarman's inappropriate behavior and the negative impact it was having on her colleagues, and Jarman's history of poor judgment and lack of professionalism." (Id.) Hampton was not involved in the decision to terminate Jarman. (Id.) Jostens did not hire anyone to take Jarman's former position, but instead her former coworkers absorbed her job duties. (Id.)

## II. STANDARD OF REVIEW

In reviewing a motion for summary judgment, this Court will only consider the narrow question of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The Court is required to view "the facts and reasonable inferences in the light most favorable to the nonmoving party . . . ." Ferrari v. Ford Motor Co., 826 F.3d 885, 891 (6th Cir. 2016) (citing Cass v. City of Dayton, 770 F.3d 368, 373 (6th Cir. 2014)).

## III. ANALYSIS

Jarman alleges four causes of action: (1) reverse-racial discrimination, in violation of the Title VII of the Civil Rights Act of 1964; (2) retaliation for complaining about harassment and discrimination, in violation of Title VII; (3) disability discrimination, in violation of the Americans

4

with Disabilities Act ("ADA"); and (4) retaliation of taking family medical leave, in violation of the FMLA. (Doc. No. 1 at 4-5.) Jostens moved for summary judgment on all four claims. (Doc. No. 14.) Jarman only responded to Jostens's arguments on the reverse-race discrimination claim and the disability discrimination claim. (Doc. No. 20.) After an independent review of the record and the motion, Jostens's motion is granted as to the Title VII retaliation and the FMLA retaliation claims. See Local Rule 7.01(b) ("Failure to file a timely response shall indicate that there is no opposition to the motion.").

A. REVERSE-RACE DISCRIMINATION

Jarman first argues that Jostens discriminated against her because she is white and Pearson, an African-American, stopped talking to Jarman after Hampton approved Pearson's request for overtime. (Doc. No. 20 at 10.) Jarman believes Pearson treated Jarman like "she was invisible" because of her race. (Id.)

Under McDonnell Dougles Corp. v. Green, 411 U.S. 792, 802 (1973), a plaintiff must prove four elements to establish a prima facie case of reverse-race discrimination: (1) "background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority;" (2) "that the plaintiff was qualified for the job;" (3) the plaintiff "suffered an adverse employment action;" and (4) "the plaintiff was treated differently than similarly situated employees of a different race." Romans v. Mich. Dept. of Human Servs., 668 F.3d 826, 837 (6th Cir. 2012) (quoting Zambetti v. Cuyahoga Cmty. Coll., 314 F.3d 249, 255 (6th Cir. 2002)).

Jarman cannot establish a prima facie case of reverse-race discrimination because she does not even attempt to address "background circumstances [to] support the suspicion that [Jostens] is the unusual employer who discriminates against the majority." Romans, 668 F.3d at 837. Jarman

5

does not argue that it can prove these "background circumstances," nor is there any evidence in the record of any "background circumstances." Because there is no evidence in the record to which Jarman can use to establish the first prong of a prima facie race discrimination case, the Court grants Jostens summary judgment on this claim.

B. DISABILITY DISCRIMINATION

Jarman alleges that Jostens failed to accommodate her skin condition. (Doc. No. 20 at 6.) Jostens responds that Jarman never requested an accommodation. (Doc. No. 22 at 4.)

To establish a prima facie case of failure to accommodate under the ADA, "a plaintiff must show that: (1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation." Judge v. Landscape Forms, Inc., 592 Fed. Appx. 403, 407 (6th Cir. 2014). As part of the prima facie case, the plaintiff "bears the initial burden of proposing an accommodation and showing that" her "proposed accommodation is objectively reasonable." Kleiber v. Honda of Am. Mfg., 485 F.3d 862, 870 (6th Cir. 2007). The employer then bears the burden to demonstrate that any particular accommodation would impose an undue hardship. Johnson v. Cleveland City School District, 443 Fed. Appx. 974, 983 (6th Cir. 2011).

Jarman never asked for or proposed any reasonable accommodation. Jarman contends that Jostens had her medical records and could see her skin rash, and therefore should have known she needed an accommodation. (Doc. No. 20 at 9.) Other district courts have found that an employee's giving her employer her medical records is not sufficient to establish the initial burden of requesting a reasonable accommodation. See Deister v. AAA Auto Club of Mich., 91 F. Supp. 3d 905, 925 (E.D. Mich. 2015) (holding that the plaintiff did not request a reasonable accommodation

6

when she gave her employer her medical records); Badri v. Huron Hospital, 691 F. Supp. 2d 744 (N.D. Ohio 2010) (same). This Court can find no authority, and Jarman does not provide any, to hold that Jarman's actions—or inactions—were sufficient to request a reasonable accommodation for her skin condition. Jarman cannot establish a prima facie case for failure to accommodate.

**IV. CONCLUSION**

For the foregoing reasons, Jostens's motion for summary judgment (Doc. No. 13) is **GRANTED**. Jostens's motion to set a dispositive motion briefing schedule and new trial date (Doc. No. 17) is **DENIED AS MOOT**. The January 6, 2017 pretrial conference and January 17, 2017 trial are **CANCELED**.

The Clerk shall enter judgment in accordance with Federal Rule of Civil Procedure 58.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE